1   R. Rex Parris, Esq. (SBN 096567)
     rrparris@rrexparris.com
2   Alexander R. Wheeler, Esq. (SBN 239541)
     awheeler@rrexparris.com
3   Patricia K. Oliver, Esq. (SBN 193423)
     poliver@rrexparris.com
4   **R. REX PARRIS LAW FIRM**
    43364 10th Street West
5   Lancaster, California 93534
    Telephone:    (661) 949-2595
6   Facsimile:    (661) 949-7524

7   Don Howarth, Esq. (SBN 53783)
    dhowarth@howarth-smith.com
8   Suzelle M. Smith, Esq. (SBN 113992)
    ssmith@howarth-smith.com
9   Jessica L. Rankin, Esq. (SBN 279237)
    jrankin@howarth-smith.com
10  **HOWARTH & SMITH**
    523 West Sixth Street, Suite 728
11  Los Angeles, California, 90014
    Telephone:    (213) 955-9400
12  Facsimile:    (213) 622-0791

13  David S. Casey, Jr., Esq. (SBN 60768)
    dcasey@cglaw.com
14  Gayle M. Blatt, Esq. (SBN 122048)
    gmb@cglaw.com
15  Jeremy Robinson, Esq. (SBN 188325)
    jrobinson@cglaw.com
16  Jason C. Evans, Esq. (SBN 272932)
    jevans@cglaw.com
17  **CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
    110 Laurel Street
18  San Diego, California 92101
    Telephone:    (619) 238-1811
19  Facsimile:    (619) 544-9232

20  Attorneys for Plaintiff and the putative class

21              **UNITED STATES DISTRICT COURT**

22              **NORTHERN DISTRICT OF CALIFORNIA**

23  JOSE LUIS GARNICA, an individual; on behalf )      CLASS ACTION
24  of himself and a class of similarly situated )
    consumers,                                   )      Case No.:
25                       Plaintiffs             )
    v.                                           )      **PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF**
26                                               )      **THE SHERMAN ACT**
    HOMETEAM PEST DEFENSE, INC., a               )
27  Delaware corporation, ROLLINS, INC., and     )
    DOES 1 through 100, inclusive,               )
28                       Defendants,             )

COMPLAINT

## **NATURE OF ACTION**

1.   This is an antitrust action against HomeTeam Pest Control, Inc., brought pursuant to section 2 of the Sherman Antitrust Act of 1890 ("Sherman Act").Plaintiff brings this action on his own behalf and on behalf of all similarly situated persons who owned a home anytime between November 26, 2010 through the date of trial of this action (the "Class Period") with a tube-in-the-wall pest control system serviced by HomeTeam Pest Defense, Inc. ("HomeTeam").



2.   HomeTeam installs tube-in-the-wall pest control systems directly into the walls during construction of new homes.  This unique tube-in-the-wall system feeds to a panel on the home's exterior for servicing – any licensed pest control technician should be able to inject pesticides into the tubing where it is ultimately distributed into the wall voids.  Because tube-in-the-wall pest control kills common household pests where they live, breed, hide, and move, tube-in-the-wall systems provide an unparalleled ability to control termites, bed bugs, cockroaches, and ants.  HomeTeam deliberately set out to monopolize the installation market for tube-in-the-wall systems, and with that monopoly, HomeTeam successfully sought to keep competitors from servicing tube-in-the-wall systems.  Such anticompetitive conduct included the installation of a locking port cover to prevent everyone (including the homeowners) from accessing the service panel for the tube-in-the-wall system.  HomeTeam tells homeowners that servicing by any other company can damage the system and void the warranty on the system.  If the locked port and consumer confusion does not stifle competition, HomeTeam threatens to sue and sues any company that dares to service the system at a lower price.  Thus, homeowners like the named plaintiff end up paying monopoly prices to HomeTeam for servicing of the tube-in-the-wall systems installed in their homes.

1

**I.      Summary**

3.   Established in 1996, HomeTeam Pest Defense ("HomeTeam") was formed by Centex Homes when it purchased and consolidated every franchise company licensed to install tube-in-the-wall systems.  HomeTeam installed tube-in-the-wall systems into homes built by Centex as part of a standard tract home feature for 12 years afterwards.  HomeTeam, as part of the servicing market, would then seek out business to service the tube-systems installed in these homes after the new homeowners moved into the home.

4.   During those years, HomeTeam owned a patent on the design of the integrated tube-in-the-wall system and thus enjoyed a patent protected monopoly on the installation market for these systems.

5.   Even during the period covered by the patent, HomeTeam did not have any patent or lawful monopoly on the secondary service market.  However, using its primary monopoly power in the primary market and taking other anticompetitive steps, HomeTeam also exercised control over the secondary service market – a market with even more financial benefits due to consistent income from monthly service contracts.

6.   HomeTeam vigorously engaged in a two-fold strategy to stop competition in the secondary market for servicing tube-in-the-wall systems.  First, HomeTeam threatened to sue and actually sued any company that attempted to service customers with the tube-in-the-wall pest system.  HomeTeam wrongfully claimed that any such service infringed on their patent.  HomeTeam also falsely claimed that they owned the tube-in-the-wall systems, and thus competitors were not allowed to do any servicing.  Second, HomeTeam's senior executives obtained a patent for a special locking port cover specifically designed to lock out competitors and



provide evidence if anyone other than HomeTeam serviced the system.   The locking port is part of the system installed into the consumer class' homes and they pay for that system, including the port,

COMPLAINT

as part of the price of their homes.    HomeTeam thus insured that every tube-in-the-wall system installed in the United States contained a locked port – and HomeTeam had the only key.  Not even homeowners received a copy of the key to the access panel on their homes.  If a homeowner sought to use another servicing company, the ports had to be forcibly removed from a house (see picture above) and new ports installed.

7.  HomeTeam further misled homeowners by making representations that servicing by any other company would damage the system, and all lifetime warranties for workmanship would be void if any other company serviced the system.  These representations were made without any evidence that any other service provider had damaged any tube-in-the-wall system, or could cause any such damage.

8.  Just months before the expiration of HomeTeam's patent for the tube-in-the-wall system became invalid on July 31, 2007, HomeTeam submitted an application to trademark the tube-in-the-wall pest control system on March 27, 2007.  HomeTeam threatened patent infringement suits related to the locked ports and trademark infringement related to the servicing of the tube-in-the-wall system to stop competitors.

9.  HomeTeam succeeded in monopolizing first the installation market and then leveraging that monopoly to monopolize the servicing market.

10. These tactics proved so successful that the largest pest control company in the world – Rollins, Inc. ("Rollins") – expressed interest in acquiring the HomeTeam monopoly in 2007.  Rollins is well known for its longstanding brand of pest control offered under the Orkin name and told its shareholders that the acquisition of HomeTeam's 400,000 customers gave them the exclusive ability to service tube-in-the-wall pest control systems.

11. After this acquisition, Rollins devised a new strategy to continue to monopolize the installation market and leverage that monopoly to control the servicing market.  Backed by Rollins' financial support, HomeTeam dropped the price of tube-in-the-wall installation from $225 per home, to $75, and in some cases, performed at no cost whatsoever.  All installations were performed below cost to further HomeTeam's monopoly of the installation market.  Through these

below cost sales, HomeTeam was able to maintain its monopoly of the installation market and leverage that monopoly to monopolize the secondary service market, receiving exclusive information about the new homeowners and getting the builders to assist in retaining those homeowners as customers to HomeTeam.

12. Under Rollins' direction, HomeTeam also continued its aggressive strategy of removing all potential competitors.  HomeTeam used threats of patent infringement and treble damage lawsuits if competitors did not stop servicing tube-in-the-wall systems or charging less than HomeTeam to do the service.

13. HomeTeam succeeded by preventing virtually all homeowners with tube-in-the-wall pest control systems in the US from using any tube-in-the-wall service provider other than HomeTeam.  HomeTeam controls essentially 100% of the installation market and nearly 100% of the servicing market.

14. As a result of these actions, HomeTeam unlawfully stifled competition, created and maintained an unlawful monopoly, reduced consumer choices, and increased prices in the servicing of tube-in-the-wall systems significantly above the non-monopoly competitive price.

## PARTIES

15. Plaintiff JOSE GARNICA ("Garnica") is an individual residing in Fresno, California.  On or about October 30, 2008, Mr. Garnica's family purchased a home built by Centex Homes that included a tube-in-the-wall system installed by HomeTeam prior to the purchase. HomeTeam installed a locked port preventing any other company from servicing the tube-in-the-wall system, and in accordance with company policy, HomeTeam did not give Mr. Garnica's family a key to the port.  It was the only key not provided when they moved into their home.  Mr. Garnica retained HomeTeam shortly after moving into his home to service the tube-in-the-wall system and paid $73 per service.

16.  Defendant HomeTeam is a pest control company doing business in this judicial district, elsewhere in California, and the United States.  HomeTeam specializes in a providing a unique form of pest control through the tube-in-the-wall system.

17. Defendant Rollins is the owner of HomeTeam and a pest control company doing business in this judicial district, elsewhere in California and the United States.

18. Defendants, Does 1 through 100, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Garnica ( "Plaintiff") at this time. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities herein. Plaintiff are informed and believe and therein allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by such Defendants.

## FACTUAL ALLEGATIONS

19. Conventional pest control is usually done by spraying pesticides in open areas around a home, along baseboards and around door and window frames.

20. Conventional pest control, however, does not reach pests in the hidden areas where bugs live, reproduce, hide, and move. Some of the most common household pests thrive by living, breeding, and moving through a home in wall voids.

21. Wall voids provide a microclimate particularly suitable for insect development and provide easy access to multiple rooms and living spaces. As a result, cockroaches, ants, termites, and bed bugs thrive in the wall voids. Wood infesting pests like termites greatly benefit from living in the wall voids because they can create colonies in the wood beams of the house and infest the sill plates and beams without detection by the homeowner.

22. By the early 1970's, area misting and sealed fumigation became preferred methods for eliminating hidden pests. These methods, however, were costly, time consuming, and required an extreme amount of caution. Homeowners had to remove all pets, food, cosmetics, toiletries, and delicate clothes, sometimes needing to evacuate for several days.

23. In the late 1980's, several systems developed to essentially merge the conventional spray application with misting systems that targeted pests in the wall voids.

24. The system that emerged was called an integrated tube-in-the-wall pest control system – where a technician installed small tubes through the walls of a structure like electrical

wires.  See, e.g., United States Patent No. 5,231,796.  Externally mounted junction boxes allowed injection of pesticides directly into the tubes without having to spray pesticides into the living areas of the home or locate cracks or crevices to spray pesticides.  HomeTeam acquired the rights to this patent and became one of the first companies to specialize in installing and servicing integrated pest control systems.

25. The features which distinguish tube-in-the-wall pest control from conventional pest control include:

a. **Effectiveness** – tube-in-the-wall pest control is nearly 100% effective because it kills bugs where they live inside walls.

b. **Cleanliness** – tube-in-the-wall pest control is cleaner than conventional pest control because there is nothing sprayed on carpet, furniture or baseboards.  Thus, the house remains clean and does not sustain any damage.

c. **Safety** – tube-in-the-wall pest control is safer than traditional pest control because the pesticide is put into the wall voids.  There is never any direct contact between the pesticide and the people or animals inside the house.

d. **Convenience** – tube-in-the-wall pest control is more convenient than conventional pest control because service technicians can service the interior (specifically the wall voids) without ever entering the house. Technicians instead inject the pesticide into the tubes through the exterior port on the home.  (See picture).



e. **Security –** tube-in-the-wall pest control is much more secure than conventional pest control because servicemen never entire the home.

f.  **Environmentally responsible –** tube-in-the-wall pest control uses 75% less pesticides, meaning less pesticides are put into the environment.

26. The only alternative methods to reach pests in the wall require that the entire home be fumigated, holes drilled holes into walls to manually drop pesticides into the wall interior, or pest control companies look for holes, cracks and crevices for injection into the walls.

27. Centex Homes acquired the patent to the tube-in-the wall pest control and then purchased every franchise company licensed to install tube-in-the-wall systems.  These companies were all merged into one company that operated under the HomeTeam name.  HomeTeam then installed tube-in-the-wall systems into homes built by Centex as part of a standard tract home feature for years afterwards.  HomeTeam, as part of the servicing market, would then seek out business to service the tube-systems installed in these homes after the new homeowners moved into the home.

28. HomeTeam, however, had to battle for servicing customers with other companies, and to stop them, HomeTeam filed patent infringement cases against those competitors.

29. In 2004, HomeTeam sought and obtained a patent for special locking port covers designed to cover the external access points of the tube-in-the-wall system.  These port covers were specifically invented to prevent all competitors from servicing the integrated system.

30. HomeTeam's senior executive (Jeryl Gahloff, Jr.) admitted to the U.S. Patent Office that the patent was designed to prevent anyone other than HomeTeam from providing service to these systems:

> "The externally accessible ports may be accessible to any suitable service provider, such as an exterminator, who may connect a device to the externally accessible ports to inject the material, such as pesticide, into the one or more cavities. ***This may be undesirable if a particular service provider, such as may be associated with the construction of the structure, desires to be the exclusive provider of such services***."

> "According to the present invention, disadvantages and problems associated with previous techniques for preventing unauthorized access to ports of a system integrated into a structure for injection of a material into cavities in the structure may be reduced or eliminated."

<u>See</u>, US Patent No. 7,174,754; <u>see also</u> US Patent No. 7,174,753, No. 7,415,855, No. 7,404307, and No. 7,900490 (emphasis added).

31. Jeryl Gahloff also told the United States Patent Office that the locking device would provide evidence another company serviced the system:

> "Additionally, it may be desirable to ***provide evidence*** that a port cover for preventing such access to the ports has been forcibly breached. ***These objectives may be desirable if a particular service provider*** for injection of the material into the cavities ***desires to control access to the ports.***"

<u>See</u>, US Patent No. 7,174,754; <u>see</u> <u>also</u> US Patent No. 7,174,753, No. 7,415,855, No. 7,404307, and No. 7,900490 (emphasis added).

32. HomeTeam's senior executives admit that there were no safety risks or risks to the tube-in-the-wall system that justified locking this port covers. Indeed, there was no history of any damage to any tube-in-the-wall system and thus no risk to the homeowners by leaving the port unlocked.

33. HomeTeam's California District Manager, Eric Chavez, also admitted under oath that there was no risk:

> Q. "So to have [the port] unlocked, it's not, like, increasing a greater risk for the homeowner?"
>
> A. "If it's unlocked?
>
> Q. "Right."
>
> A. "***There is no risk***."

<u>See</u>, Deposition of Eric Chavez at 178:12–16 (Emphasis added).

34. Customers, moreover, were misled by HomeTeam into believing that service by any other company would damage the integrated tube-in-the-wall system. On each port cover, HomeTeam placed a warning stating Homeowners would lose the warranty for the entire tube-in-the-wall system running through the walls of their home if there was any damage from "unauthorized service." HomeTeam further required customers to "acknowledge[] that servicing by any person or entity other than the [HomeTeam] could damage the [tube-in-the-wall ]system." HomeTeam, however, had no reason to believe that other service providers had ever caused any damage to a tube-in-the-wall system, or that they would be likely to do so. Further, by referring to

service by other companies as "unauthorized," HomeTeam misled the homeowners and gave the appearance that only one company had the legal ability to access the tube-in-the-wall system.

35. HomeTeam went as far as to tell competitors that HomeTeam owned all ports to the tube-in-the-wall systems installed on the homes, even after the homes were lawfully purchased by the Garnica and other putative class members.  If another company disregarded this statement and serviced the system, HomeTeam would threaten to, and did file suit against competitors.  HomeTeam would also threaten to void the Homeowner's warranty of the Homeowner's tube-in-the-wall system.

36. HomeTeam's claim of ownership and the right to exclude "unauthorized" service is contrary to any legal principle of homeownership or patent law.  Homeowners have an absolute legal right to obtain servicing of the tube-in-the-wall system by any company they chose.  There is no right for a holder of any patent – in this case a patent just for the port itself – to stop these homeowners for engaging another company to service the tube-in-the-wall pest control systems. See, e.g., Bowman v. Monsanto Co., 133 S. Ct. 1761, 1766 (2013) quoting Quanta Computer, Inc. v. LG Electronics, Inc., 553 U.S. 617, 625, (2008)("the initial authorized sale of a patented item terminates all patent rights to that item."); See also United States v. Gen. Elec. Co., 272 U.S. 476, 489 (1926) ("It is well settled, as already said, that where a patentee makes the patented article, and sells it, he can exercise **no future control over what the purchaser may wish to do with the article after his purchase.** It has passed beyond the scope of the patentee's rights.")(emphasis added).

37. Nonetheless, HomeTeam continues to claim control over these port covers. HomeTeam uses this so-called ownership as the grounds to bring sham legal actions against any competitor who attempts to service tube-in-the-wall pest control systems.  HomeTeam claims that it is unlawful for service providers to open or remove the locked port boxes.  Pest control competitors were even told that their "unlawful" actions subjected the homeowners – their customers—to patent infringement.

38. Under oath, the California District Manager overseeing HomeTeam operations explained that HomeTeam viewed direct competition in the tube-in-the-wall system service market

as improper because "there's still a brotherhood in pest control."  When asked, he explained that there is an understanding that no other "company [will be] touching our system."  HomeTeam, under this District Manager, brought suit to stop a company that "touched" the HomeTeam system and offered to charge consumers less than HomeTeam charged.

39. These actions by HomeTeam prevented other pest control companies from entering the secondary market for servicing of tube-in-the-wall systems.

40. HomeTeam's anticompetitive tactics were successful, turning HomeTeam into the fourth largest pest control service provider in the nation by 2008.  HomeTeam's impressive financial performance, and possession of monopolies in both the tube-in-the-wall installation and service markets enticed Rollins into purchasing HomeTeam, and its monopolies, for $137 million in 2008.

41. Before that deal was announced, Rollins conducted its due diligence beginning on November 6, 2007.  Rollins reviewed a number of agreements that demonstrated how HomeTeam acquired its monopoly power and maintained that power.  Indeed, in the midst of the negotiations with Rollins, HomeTeam sold one or more branches to Terminix licensee(s) with express provisions whereby Terminix agreed it would ***never*** service any tube-in-the-wall pest control system.

42. By the time Rollins completed its due diligence for the sale in early 2008, it received all assurances that it would control servicing of all pre-existing tube-in-the-wall customers and all future customers.

43. On March 31, 2008, Rollins announced that it acquired HomeTeam and gained immediate access to some 400,000 customers.  Gary Rollins, president and CEO of Rollins, described the acquisition as follows:

> "This acquisition provides significant opportunity for Rollins to ***leverage HomeTeam's proprietary technology*** and new home marketing expertise to more markets throughout the U.S.  The purchase of HomeTeam will provide us with an ***entry into a new business channel***, and provide our company a meaningful opportunity for longer term growth."  (Emphasis added.)

44. Rollins' 2008 Annual Report openly acknowledged HomeTeam's achieved monopoly status, stating "all new homes" with tube-in-the-wall systems were "waiting to be serviced by HomeTeam ***exclusively***."  (Emphasis added.)

10

45. Following Rollins' acquisition, HomeTeam added a new method to obtain monopoly power in the servicing market.  HomeTeam entered into agreements with national builders of tract houses to install the tube-in-the-wall system below cost.  In return, builders agreed to: (1) provide a closing list and "completed first service certificate" to HomeTeam every 15 days; (2) utilize HomeTeam's "marketing program which includes use of the Company's service certifications," (3) permit HomeTeam "to provide sales training to Builder's sales group at least every ninety (90) days."

46. HomeTeam charged builders as little as $75 per house to install the tube-system. Evidence further suggests that many installations were done completely free of charge. These prices fell far below all recent and historical prices.  For example, in the April 2008 Support Agreement between Centex and Rollins, the price for installations in Bakersfield was $225.

47. In exchange for below cost installations, builders agreed to assist HomeTeam in capturing customers.  HomeTeam could terminate the agreement if the builder's customer "Capture Rate" was less than 80%.  The installation agreements defined "Capture Rate" as follows:

> "The percentage derived by dividing the number of Accepting Homebuyers by the number of Closings of Eligible Homes.  'Accepting Homebuyers' means the number of Builder's homebuyers who received their first [tube-in-the-wall] service during a calendar quarter.  'Closings of Eligible Homes' mean the number of closings (during the same quarter) of Builder's homes in which [tube-in-the-wall] systems are installed."  See, Document Bates No. 446-447.

48. In its June 30, 2013 Quarterly Report to the United States Securities and Exchange Commission, Rollins admitted it installed below cost:  "***Management views the loss on installation as a customer acquisition cost*** and a reasonable one at that."  (Emphasis added.)  While selling below cost "hurts our margins in the short term. . . . it drives HomeTeam's future growth and profitability."

49. As a result of the below cost installation, no other company can compete in the market for installation of tube-in-the-wall pest control systems.

50. Under Rollins' direction, HomeTeam continued its threat of patent infringement and treble damage lawsuit claims if competitors serviced tube-in-the-wall systems.

51. Thus, between the misrepresentations to homeowners and threats to competitors, HomeTeam enjoyed a benefit that few companies enjoyed in 2008.  HomeTeam could increase its prices during a down economy and enjoy supracompetitive profits.  In 2008, Rollins generated $1,020,564,000 in revenues – $98,931,000 of those revenues arose from the HomeTeam acquisition. Rollins proudly explained to its shareholders that it could obtain these profits in a down economy as a result of a successful price increase program:

> "***Residential pest control revenues grew 22.7% in 2008 due primarily to the addition of HomeTeam*** as well as an increased number of leads received, better average selling prices, improvements in customer retention, and a ***successful price increase program***."[1]

52. Rollins also explained to its shareholders that HomeTeam's business model of applying "price realization" would continue to gain "strength from recurring revenues."

53. By removing competition, HomeTeam charges a much higher price for servicing tube-in-the-wall systems than it could in a competitive market.

54. By using its monopoly power in the installation market to make it almost impossible for any other company to compete in the service business, HomeTeam created an unlawful monopoly in the service industry. HomeTeam thereby continues to earn monopoly revenues without interruption from all homes with tube-in-the-wall systems. Thus, HomeTeam has not only violated the antitrust laws but has collected monopoly revenues from consumers, which the law is designed to prevent.

55. HomeTeam and Rollins used its anti-competitive policies and practices in all geographic areas where HomeTeam operates including California, Arizona, Florida, Georgia, Maryland, Missouri, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Virginia, and West Virginia.

---

[1] Rollins 2008 Annual report to Shareholders at 26 (emphasis added).

COMPLAINT

## II.        Summary of HomeTeam's Anticompetitive Conduct

56. Rollins' and HomeTeam's anticompetitive business practices violate the Sherman Act in all states where they service tube-in-the-wall pest control systems.  As a result, Plaintiff was charged more for servicing than he would have been charged in a competitive market.

57.  HomeTeam acquired the patent and all franchises licensed to do tube-in-the-wall pest control, and then HomeTeam wrongfully  brought suit against competitors seeking to service those tube-in-the-wall systems.   As one example, HomeTeam sued Killian Pest Control in *Killian Pest Control v. HomeTeam Pest Defense*, Case Number S-1500-CV-279644 in Kern County Superior Court on June 17, 2013. Killian Pest Control defended and HomeTeam dismissed the suit. Killian Pest Control is filing a separate claim for antitrust violations against HomeTeam for excluding it from the tube-in-the-wall installation and servicing markets.

58.  HomeTeam further developed a patent to lock competitors out of the tube-in-the-wall system.   HomeTeam then withheld the key to port from the homeowners with tube-in-the-wall systems to prevent them from choosing another pest control service provider tube-in-the-wall pest control.  This key was the only key that new homeowners did not receive upon closing.

59.  HomeTeam further deceived Homeowners by suggesting that other competitors would damage the tube-in-the-wall system, and warranties for workmanship and servicing would become void if the homeowner used any other service provider.

60. HomeTeam, under the Rollins umbrella, installed tube-in-the-wall systems below cost, and thus prevented other companies from being able to enter the installation market. HomeTeam also obtained exclusive access to the builder's list of customers and a captive audience of homeowners.

61.  HomeTeam further stifled competition by telling competitors that HomeTeam owned the system and by threatening patent litigation if the competitor offered tube-in-the-wall pest control.  Yet the patent for the system expired in 2007 – the only active patents were those patents for the locking port covers, which were intentionally designed to keep competitors out.  If the threats

13

did not work, HomeTeam would sue the competitors to stop them. These bogus legal actions were executed for the sole purpose to intimidate and harass competitors.

62. HomeTeam also entered into noncompetition agreements with other pest control service providers to allocate the tube-in-the-wall pest control market. In this way, HomeTeam has established that pest control service providers in its so-called "brotherhood" would not compete with HomeTeam in the tube-in-the-wall installation and service markets.

## III.    Relevant Market

63. HomeTeam monopolizes the market for tube-in-the-wall pest control installations and the market for servicing of those tube-in-the-wall systems in all geographic markets where these systems are installed into new homes. Based upon discovery to-date, HomeTeam controls 100% of the market for installation of tube-in-wall pest control systems in tract housing developments and nearly 100% of the market for servicing such systems.

64. Integrated, tube pest control is distinct and superior to conventional pest control because it "hit[s] bugs where they live, hide, and breed – inside the walls."[2] HomeTeam itself touts many other attributes:

- **Effectiveness** – tube-in-the-wall pest control is nearly 100% effective because it kills bugs where they live inside walls. "[M]aterials [also] remain effective longer because they're not exposed to sunlight."

- **Cleanliness** – tube-in-the-wall pest control is cleaner than conventional pest control because there is nothing sprayed on carpet, furniture or baseboards. Thus, the house remains clean and does not sustain any damage.

- **Safety** – tube-in-the-wall pest control is safer than traditional pest control because the pesticide is put into the wall voids. "[T]here's no exposure to the pest control materials because everything is done inside the walls of the home."

- **Convenience** – tube-in-the-wall pest control is more convenient than conventional pest control because service technicians can service the interior (specifically the wall voids) without ever entering the house. After the first service, "subsequent pest control services are handled from outside the home, not inside. Now that's convenient and easy."

- **Security** – tube-in-the-wall pest control is much more secure than conventional pest control because servicemen never entire the home.

---

[2] http://www.pestdefense.com/taexx; http://www.pestdefense.com/pestvideos#Taexx; http://www.pestdefense.com/pestvideos#TaexxforNewConstruction

- **Environmentally responsible –** tube-in-the-wall pest control uses 75% fewer pesticides, meaning fewer pesticides are put into the environment.

65. Because the tube-in-the-wall system constitutes a method of pest control with superior results, there is no equivalent alternative to tube-in-the-wall pest control. The only alternative method is to drill holes into walls to manually drop pesticides into the wall interior. Due to the evasive, expensive, time consuming and aesthetic pitfalls of this method, it cannot be considered an interchangeable alternative to tube-in-the-wall systems. Thus, tube-in-the-wall systems represent a distinct market because the pest control system is integrated into the home itself.

66. Indeed, HomeTeam itself defines the tube-in-the-wall system as distinct from conventional pest control in virtually all of its noncompetition agreements and purchase/sale agreements with other pest control providers. Further, in 2008, Rollins' CEO described the tube-in-the-wall system as a "new business channel," distinguishing it from all other pest control services provided by Rollins.

67. HomeTeam used its anti-competitive policies and practices in all geographic areas where HomeTeam operates including California, Arizona, Florida, Georgia, Maryland, Missouri, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Virginia, and West Virginia.

## CLASS ACTION ALLEGATIONS

68. Plaintiff's action is brought on behalf of himself and all other similarly situated. Plaintiff seeks to represent: "All individuals who owned a home in which HomeTeam installed a tube-in-the-wall pest control system from November 26, 2010 to the date of judgment in this action and who retained HomeTeam to service the tube-in-the-wall pest control system at any time from November 26, 2010 to the date of judgment in this action."

69. Federal Rule of Civil Procedure 23(a) establishes four threshold requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. Fed.R.Civ.P. 23(a).

15

70.  This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(A)(1)-(4) and the predominance and superiority requirements of Rule 23(b)(3) and the requirements of Rule 23(b)(2).

71.  Class certification under Rule 23(b)(2) is appropriate because Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injective relief or corresponding declaratory relief with respect to the Class as a whole. Fed.R.Civ.P. 23(b)(2).

72.  Class certification under Rule 23(b)(3) is appropriate because common questions of law and fact predominate and a class action is superior to other forms available for fair and efficient adjudication of the claims of this action.   Fed.R.Civ.P. 23(b)(3).

73.  The Plaintiff Class satisfies the numerosity standards.  The Class is believed to number in the hundreds of thousands.  As a result, joinder of all Class members in a single action is impracticable.  HomeTeam reported having approximately 400,000 customers at the time Rollins acquired its customer relationships in 2008 and added over 100,000 since that time.  The exact number can be easily determined by obtaining records from Rollins or HomeTeam.

74.  There are questions of fact and law common to the Class which predominate over any questions affecting only individual members.  The questions of law and fact common to the Class and arising from Defendants' actions include, without limitation, the following:

    a.    Whether in the marketing and installing of the tube-in-the-wall system, Defendants committed acts designed to create a monopoly;

    b.    Whether Defendants committed acts designed to create a monopoly in the servicing of tube-in-the-wall systems in violation of the federal antitrust laws;

    c.    Whether Defendants acts designed to create a monopoly damaged consumers by increasing the prices of servicing tube-in-the-wall systems above the prices which would be found in a competitive market;

16

COMPLAINT

1          d.     Whether Defendants' conduct constituted unlawful business acts or

2              practices in violation of Section 2 of the Sherman Act, 15 U.S.C. 2;

3          e.     Whether HomeTeam's patented locking devices were improperly

4              designed to and did prevent homeowners from obtaining services for

5              tube-in-the-wall pest control by other pest control companies in

6              violation of the Sherman Act;

7          f.     The appropriate measures of damages and other relief.

8      75. Common questions predominate over individual ones.

9      76. Plaintiff, as the Class representative, is asserting claims and defenses typical of

10 the rest of the Class.

11     77. Plaintiff, as the Class representative, will fairly and adequately represent the

12 interests of the Class.  Plaintiff has the same causes of action as the other Class members and does

13 not have interests adverse to them.  Plaintiff is committed to vigorously prosecuting this lawsuit and

14 have retained experienced counsel for this purpose.

15     78. Plaintiff is aware of no difficulty that will be encountered in the management of

16 this litigation that would preclude maintaining this national Class action.

17     79. The names and addresses of potential Class members can be obtained from

18 Defendants.  Notice can be provided to the members of the Class via first class mail or as otherwise

19 directed by this Court.

## JURISDICTION

20

21     80.  This complaint alleges violations of the Sherman Act, 15 U.S.C. § 1.

22     81.  It is filed under, and jurisdiction is conferred upon this Court by, Sections 4, 4C,

23 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 15c, 22, and 26.  All claims under federal law are

24 based upon a common nucleus of operative facts and the entire action commenced by this Complaint

25 constitutes a single case that would ordinarily be tried in one judicial proceeding.

26     82.  The Court further has jurisdiction over the federal claims under 28 U.S.C.

27 sections 1331 and 1337.  The Court has jurisdiction over the state claims under 28 U.S.C. section

28

1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

## INTRADISTRICT ASSIGNMENT

83.  Venue is proper in this district pursuant to 15 U.S.C. §§15, 22, and 26, and 28 U.S.C. §1391 because Defendants transact business in this district, Defendants have offices in this district, and a substantial part of the interstate trade and commerce involved and affected by the alleged violations of the antitrust laws was and is carried on in part within this district. The acts complained of have had, and will have, substantial anticompetitive effects in this district.

## FIRST CAUSE OF ACTION

### Violation of the Sherman Act Section 2, 15 U.S.C. 2

84. Plaintiff alleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

85. HomeTeam and Rollins unlawfully attempted to monopolize and achieved monopoly power in the tube-in-the-wall installation and service markets.  Specifically, HomeTeam and Rollins (i) entered agreements with builders to install tube-in-the-wall systems and thereby obtain confidential information about the sale of new homes with this system; (ii) sold installation services at a loss to achieve its anticompetitive goal of precluding competitors from entering the installation market; (iii) marketed to a captive audience with materials that suggest that only one company has the legal right or ability to safely service the pest control system; (iv) obtained agreements that suggest that HomeTeam was and will always be the owner of fixtures on the home with the tube-in-the-wall system; (v) obtained  agreements guaranteeing that they would not employ any of HomeTeam's competitors; (vi) provided knowingly false statements to potential customers related to competitor's inability to perform service to the tube-in-the-wall system; (vii) harassed, intimidated, and pursued sham litigation against competitors for the purpose of intimidating competitors into leaving the market; (viii) threatened to void warranties to Homeowner's tube-in-the-wall system; and (ix)  entered agreements with competitors to allocate the market.   These actions were done with the purpose of obtaining a monopoly power and had no appropriate or legitimate business justification.

86. HomeTeam and Rollins' unlawful acts to restrain trade has excluded competition, denied consumer's their right to choose their pest control service provider, and increased prices for tube-in-the-wall services.

87. Plaintiff has been injured in fact by these unlawful acts because they paid higher prices than they would have paid in a competitive market.  Plaintiff suffered injury as a direct and proximate result of Defendants' unlawful acts, and Defendants are therefore liable for all remedies provided including treble damages, interest, injunctive relief, costs and attorney's fees in amounts to be proved at trial.

88. Defendants' unlawful monopolization of the tube-in-the-wall installation and service markets violates the Sherman Antitrust Act, 15 U.S.C 2, and its unlawful monopolization practices are continuing and will continue unless they are permanently enjoined. No elaborate industry analysis is required to demonstrate the anticompetitive nature of this conduct.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants.

1.   Plaintiff request that the Court adjudge and decree that:

    a.   The conduct alleged herein constitutes an illegal restraint of interstate trade and commerce in violation of the Sherman Act.

2.   Plaintiff also seeks an order permanently restraining and enjoining Defendants from continuing the unfair and anticompetitive activities alleged herein;

3.   Plaintiff also seeks damages in a sum to be determined according to proof at trial, including treble damages pursuant to statute and:

    a.   Prejudgment interest at the legal rate;

    b.   Attorney's fees including fees;;

    c.   Costs of suit herein incurred; and

    d.   Such other and further relies as the court may deem just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury for all issues so triable.


Date:  November 26, 2014                    **R. REX PARRIS LAW FIRM**


                                            By ___/s/ Patricia K. Oliver_____

                                                Patricia K. Oliver
                                                Attorneys for Plaintiff