UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE LUIS GARNICA,

Plaintiff,

v.

HOMETEAM PEST DEFENSE, INC., et al.,

Defendants.

Case No.  14-cv-05243-VC

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 29

The motion to dismiss the First Amended Complaint is granted with leave to amend.

**1.**  HomeTeam argues that Garnica's claims are time barred because claims brought under the Sherman Act are subject to a four-year statute of limitations and Garnica's cause of action accrued in 2008 when he purchased his home and retained HomeTeam for service of his Taexx tube-in-the-wall system.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) ("Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.").

Garnica's First Amended Complaint alleges that he continued to pay HomeTeam to service his Taexx system until August 2014.  Garnica contends that HomeTeam's ongoing servicing of his Taexx system was a continuing violation, with each service appointment constituting a new an overt act.  *See Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989) ("When a plaintiff alleges a continuing violation of the law, an overt act is required to restart the statute of limitations and the statute of limitations runs from the last overt act.").

"[N]ot every act by an antitrust defendant is sufficient to restart the statute of limitations." *Aurora Enterprises, Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir. 1982).  To restart the statute of limitations, the overt act "1) . . . must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) . . . must inflict new and accumulating injury on the plaintiff."  *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987).  "[T]he mere fact that defendants receive a benefit today as a result of a contract [that itself violated the

Sherman Act] is not enough to restart the statute of limitations." *Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir. 1982); *see also Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989) (rejecting claim that continued payments under a lease agreement alleged to be an unlawful tying agreement were overt acts sufficient to restart the statute of limitations period). But "non-legal actions taken pursuant to a pre-limitations period contract can lead a new cause of action to accrue." *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1203 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1157 (2015). Indeed, even altering the terms of an illegal pre-limitations period contract may be sufficient. *See id.* at 1204 (holding that adoption of new license agreement that expanded the range of products beyond those covered in original agreement "was a 'new and independent act' that caused 'new and accumulating injury' within the meaning of *Pace*"). The question is whether there were "separate violations within the limitations period that [were] not controlled by the previous act or decision and which inflict new injury." *Pace Indus.*, 813 F.2d at 238. What's more, "the Supreme Court and federal appellate courts have recognized that each time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act." *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1733 (2015).

Thus, if HomeTeam's conduct was limited to "passive receipt of profits," from the 2008 agreement this would not constitute an overt act. *See Pace Indus.*, 813 F.2d at 237. But the First Amended Complaint contains no details about the nature of the service agreement, and the Court is unable to discern whether HomeTeam's conduct was so limited. HomeTeam may well have altered the terms of its agreement with Garnica within the statute of limitations period. Or the agreement may have been more akin to a series of individual sales, such that each service was a new overt act. And with respect to the statute of limitations defense, at the motion to dismiss stage "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United*

United States District Court
Northern District of California

2

1   *States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (emphasis added).  Accordingly, the Court denies

2   HomeTeam's motion to dismiss Garnica's complaint on statute of limitations grounds.[1]

3       **2.**  "In order to state a valid claim under the Sherman Act, a plaintiff must allege that the

4   defendant has market power within a 'relevant market.'  That is, the plaintiff must allege both that

5   a 'relevant market' exists and that the defendant has power within that market."  *Newcal Indus.,*

6   *Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008).  The "relevant market" has two

7   components, "a relevant product market and a relevant geographic market."  *Sidibe v. Sutter*

8   *Health*, 4 F. Supp. 3d 1160, 1174 (N.D. Cal. 2013).  "The process of defining the relevant market

9   is a factual inquiry for the jury."  *High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987,

10  990 (9th Cir. 1993).  However, "a complaint may be dismissed under Rule 12(b)(6) if the

11  complaint's 'relevant market' definition is facially unsustainable."  *Newcal Indus., Inc. v. Ikon*

12  *Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).

13      Garnica has adequately pled relevant product markets—the markets for installation and

14  servicing of tube-in-the-wall pest control systems.  HomeTeam contends that the product market

15  must include other forms of pest control, but "in some instances one brand of a product can

16  constitute a separate market," *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451,

17  482 (1992), and it's reasonable to infer from the allegations in the complaint that tube-in-the-wall

18  pest control systems are quite distinct, such that they form a separate market from the market for

19  other forms of pest control.  *See, e.g.*, *RealPage, Inc. v. Yardi Sys., Inc.*, 852 F. Supp. 2d 1215,

20  1225 (C.D. Cal. 2012) (allegation that particular cloud computing services were distinct from

21  "generic" cloud computing services); *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d

22  1120, 1129 (C.D. Cal. 2009) (allegation that "high-end competitive swimwear" was distinct from

23  other types of swimwear).

24  _____

25  [1]  It may well be, depending on what the evidence shows about the nature of the relationship
    between Garnica and HomeTeam, that HomeTeam will prevail at summary judgment on its statute
26  of limitations defense.  Furthermore, this is a proposed class action, and the possibility that
    Garnica has a serious statute of limitations problem may be relevant to whether he is typical of or
27  can adequately represent the interests of the proposed class members.  Indeed, it is telling that
    Garnica, in his complaint, seeks to represent people "who owned a home in which HomeTeam
28  installed a tube-in-the-wall pest control system from November 26, 2010 [not November 26, 2008]
    to the present."

*United States District Court*
*Northern District of California*

3

Garnica has not, however, adequately defined the relevant geographic market.  The complaint alleges that HomeTeam installs tube-in-the-wall systems in a number of states across the nation, "including the states of California, Arizona, Florida, Georgia, Maryland, Missouri, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Virginia, and West Virginia."  But the complaint provides no details about whether customers in states other than the ones listed—or even whether customers throughout each of the listed states—"can practicably turn" to HomeTeam for installation of tube-in-the-wall systems.  *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

The complaint further alleges that HomeTeam's website is "available nationwide," but obviously the mere fact that people all over the country (and presumably the world) can access HomeTeam's website has no bearing on where HomeTeam's system is actually available to customers.  And the complaint alleges that "HomeTeam engages in national planning of the installation of tube-in-the-wall systems," but without a better understanding of where the systems are actually available, an allegation of national planning is not enough.  *Compare United States v. Grinnell Corp.*, 384 U.S. 563, 575 (1966).

Overall, Garnica's "definition of the relevant geographic market [for installation of tube-in-the-wall systems] is vague and conclusory."  *See Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1010 (N.D. Cal. 2013).

Similarly, in describing the geographic market for servicing tube-in-the-wall systems, the complaint alleges that "HomeTeam[] services tube-in-the-wall systems nationwide, including at least the states of California, Arizona, Florida, Georgia, Maryland, Missouri, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Virginia, and West Virginia."  It also alleges that HomeTeam's "customers are located in every state in which HomeTeam operates, including California, Arizona, Florida, Georgia, Maryland, Missouri, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Virginia, and West Virginia."  Although these allegations are vague, they could easily be read as implicitly acknowledging that HomeTeam does not in fact operate throughout the United States.  Thus, the complaint does not plead sufficient

1    facts to plausibly allege that HomeTeam's "area of effective competition" in the tube-in-the-wall

2    servicing market is nationwide.

3         The FAC alternatively alleges "geographic markets for the servicing of tube-in-the-wall

4    systems . . . correspond[ing] to the areas of service for the individual offices providers [*sic*] of

5    such servicing."  But the complaint doesn't say anything specific about the "areas of service" for

6    "individual offices."  And it provides no details about the competitive structure—the alternative

7    sources of supply or lack thereof—in these individual local markets.  "Information about the reach

8    of th[ese] market[s] is not exclusively within the Defendants' possession.  Plaintiff should plead

9    the geographic range of the relevant market[s] with greater specificity."  *Orchard Supply*, 939 F.

10   Supp. 2d at 1010 (N.D. Cal. 2013).

11        Because Garnica's claims must be dismissed for failure to adequately plead the relevant

12   geographic market, the Court does not reach HomeTeam's remaining arguments for dismissal

13   (except for HomeTeam's arguments pertaining to the product market, which has been rejected).

14   However, the hearing on the motion to dismiss, as well as HomeTeam's briefs, have put Garnica

15   on notice of other potential defects, and the Court assumes that the next version of the complaint

16   will represent Garnica's best and last shot to state a claim.  Any amended complaint must be filed

17   within 21 days of the date of this order.  In addition, because it is highly likely Garnica can state

18   an antitrust claim with respect to the market for servicing tube-in-the-wall systems, and because

19   this case has already languished for quite some time, discovery may proceed on Garnica's claims

20   relating to the servicing market immediately upon the filing of an amended complaint.

21

22        **IT IS SO ORDERED.**

23   Dated:  June 16, 2015

24   _____

25   VINCE CHHABRIA
     United States District Judge

26

27

28

United States District Court
Northern District of California